## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| COMPRESSION TECHNOLOGY SOLUTIONS LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:11cv1579 TCM |
| EMC CORPORATION, et al., | ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

This patent dispute is before the Court[1] on the motion of defendant EMC Corporation ("EMC") to dismiss or, alternatively, to sever and transfer to the Northern District of California [Doc. 65]; the motion of defendant Hewlett-Packard Company ("H-P") joining in EMC's motion to dismiss or sever, but not in its request to transfer [Doc. 67]; the motion of defendant Quantum Corporation ("Quantum") also joining in EMC's motion to dismiss or sever, but not in the transfer request [Doc. 87]; the separate motion of Quantum to transfer to the Northern District of California [Doc. 88]; the motion of defendant NetApp, Inc. ("NetApp") to dismiss for improper joinder or, alternatively, to sever [Doc. 91]; and on NetApp's motion to transfer the case to the Northern District of California [Doc. 92].[2]

Plaintiff, Compression Technology Solutions LLC ("CTS"), opposes each motion.

---

[1] The case is before the undersigned United States Magistrate Judge by written consent of the parties.  See 28 U.S.C. § 636(c).

[2] Also pending are two motions by one of the three dismissed defendants, CA, Inc.  These motions will be denied as moot.  (See Docs. 69 and 71.)

**Background**

The patent at issue – "Parsing Information Onto Packets Using Context-Insensitive Parsing Rules Based on Packet Characteristics" – is United States Patent No. 5,414,650 ("the '650 patent").  (Compl. ¶¶ 1, 15, ECF No. 1.)  Claim 9 of the patent provides:

> An information processing method for processing an information stream comprising input packets comprising
>> receiving said information stream and receiving an indication of the boundaries in said information strum [sic] for each input packets;
>> classifying said input packets according to intrinsic characteristics of said input packets or transitions in quantitative characteristics of two or more said input packets, and
>> parsing said input packets into output packets in response to said classifying, and generating an indication of the boundaries of said output packets, wherein each of said output packets comprises or represents one or more said input packets.

(Compl. Ex. A at 15, ll 45-60, ECF No. 1-3.)  The inventor of the patent is Peter J. Hekuis. (Id. at 1.)  He assigned the patent in 1993 to Compression Research Group, Inc.  (Id. at 1; EMC Mem. Ex. D, ECF No. 66-5.)  This group assigned it in June 2011 to Acacia Research Group, LLC ("Acacia").  (EMC Mem. Ex. D, ECF No. 66-5.)  Acacia's offices are listed in the Patent Assignment Abstract of Title as being at 6136 Frisco Square Blvd., Suite 385, in Frisco, Texas.  (Id.)  On August 29, 2011, Acacia assigned the '650 patent to CTS; the assignment was recorded on September 2.  (Id.)  CTS's address is the same as Acacia's.  (Id.) It is a limited liability company organized under the laws of Missouri for the purpose of "technology licensing."  (EMC Mem. Ex. B, ECF No. 66-3.)  The only listed organizer is Cheryl Willeford at 500 Newport Center Drive, 7th Floor, Newport Beach, California.  (Id.)

CTS filed its Articles of Organization on August 26, 2011, and was granted a Certificate of Organization the same day.  (Id.)

On September 12, 2011, CTS filed this action, alleging claim 9 of the '650 patent and its dependent claims have been infringed by (1) EMC's Avamar deduplication system and Data Domain deduplication software; (2) H-P's StoreOnce software system; (3) NetApp's VTL Deduplication Software system; and (4) Quantum's DXi Series Deduplication software.[3] (Compl. ¶¶ 23, 28, 36, 40.)

The principal place of business of Data Domain is in Santa Clara, which is in the Northern District of California.  (ECM Mem. Mathews Decl. ¶ 2, ECf No. 66-6.)  At this location are, inter alia, the engineering, research, development, data warehouse, and analytical tools and metrics used in Data Domain's management, including "documents relating to sales, licensing, marketing, customer support, data center operations, and engineering, including source code, for the Data Domain products."  (Id. ¶¶ 3, 5.)  Also residing in the Northern District of California are Data Domain's co-founder, Brian Biles; its former chief technical officer, Russel Patterson, III; its chief architect, Sazzala Reddy; its vice-president of marketing, Robert Shane Jackson; and its vice president of world wide sales operations, Earle Schweizer.  (Id. ¶ 7-11.)  Robert Mathews has worked for Data Domain since October 2007 and is "knowledgeable about various aspects of Data Domain's business." (Id. ¶ 2-3.)  He resides in California and works at Data Domain's Santa Clara offices.  (Id.

---

[3]CTS also named as defendants CA, Inc., and its ARCserve 12.5; International Business Machines Corp. ("IBM") and its Tivoli system; and Quest Software, Inc. ("Quest"), and its product Netvault Smartdisk software.  These three defendants have since been dismissed.

¶ 2.)  "[N]one of Data Domain's business operations are located in the Eastern District of Missouri."  (<u>Id.</u> ¶ 4.)

Ken Saruwatari is a consultant software engineer for Avamar.  (EMC Mem. Saruwatari Decl. ¶ 2, ECF No. 66-7.)  Avamar's principal place of business is in Irvine, California.  (<u>Id.</u>)  Irvine is in the Central District of California.  "The vast majority of day-today operations for the Avamar products, including sales, marketing, customer support, data center operations, and engineering, take place at Avamar's facilities in Santa Clara and Irvine . . . ."  (<u>Id.</u> ¶ 5.)  Avamar's documents, including those relating to engineering, including source code, are managed at EMC's Santa Clara operations.  (<u>Id.</u> ¶ 6.)  Also in California are Avamar's co-founder, Scott Auchmoody, and its senior consultant software engineer, Scott Ogata.  (<u>Id.</u> ¶ 9-10.)  Another co-founder, Jedidiah Yueh, is no longer with Avamar but works near the Santa Clara facilities.  (<u>Id.</u> ¶ 8.)  Jackson and Schweizer, mentioned above in connection with EMC's Data Domain product, are also knowledgeable about the sales and marketing of Avamar products.  (<u>Id.</u> ¶ 11-12.)  "[N]one of Avamar's business operations are located in the Eastern District of Missouri."  (<u>Id.</u> ¶ 4.)

H-P's director of engineering for StoreOnce, Wayland K. Jeong, resides in California and works at H-P's facilities in Colorado.  (H-P Mot. Jeong Decl. ¶ 3, ECF No. 67-1.)  H-P's corporate headquarters and research laboratory are in Palo Alto in the Northern District of California.  (H-P Supp. Mem. at 2.)

NetApp's VTL Deduplication software incorporates tape virtualization technology developed by a company called Alacritus.  (NetApp Mem. Chang Decl. ¶¶ 3, 6; ECF No. 93-1.)  Three people co-founded Alacritus, which was first based in Livermore and later in

Pleasanton, both in the Northern District of California.  (Id. ¶ 3.)  All the research, development, engineering, customer support, sales, and marketing of the tape virtualization technology took place in the Alacritus offices.  (Id. ¶ 4.)  Plus, Alacritus used a centralized source code management system managed in Northern California.  (Id.)  One co-founder, Yafen Peggy Chang, is now a senior engineering manager for NetApp and works in NetApp's principal place of business in Sunnyvale, which is in the Northern District of California.  (Id. ¶¶ 1, 5.)  Another co-founder, Roger Stager, resides in the Northern District of California and is knowledgeable about the technical aspects of the VTL deduplication functionality.  (Id. ¶ 8.)  Pawan Saxena, an engineer manager for NetApp, is also knowledgeable about the design and architecture of the VTL deduplication functionality.  (Id. ¶ 9.)  "The product development related to the deduplication functionality of the VTL [p]roduct" was performed in India; the source code for the VTL Deduplication software is managed in Sunnyvale and are NetApp's electronic documents.  (Id. ¶ 10-11.)  The customer support for the VTL Deduplication software is in North Carolina.  (Id. ¶ 12.)  "NetApp has no employees in Missouri that were involved in the design or architecture of the VTL products or the VTL Deduplication software."  (Id. ¶ 10.)

The research, design, development, marketing, and sales activities relating to Quantum's DXi deduplication software are primarily based in San Jose, in the Northern District of California.  (Quantum Mem. Mintz Aff. ¶ 5, ECF No. 89-1.)  Also in San Jose are Quantum's original source documents and physical evidence relating to the development and sales of the DXi deduplication software.  (Id. ¶ 6.)  Laurie Mintz, Quantum's director of intellectual property, has identified twenty-six current and former Quantum employees that

might be witnesses in the case.  (Id. ¶ 7.)  Ten are current employees who reside in the Northern District of California.  (Id.)  Six are former employees who reside in that District, including Jeffrey Tofano who was formerly Quantum's chief technology officer responsible for the development of the DXi product and who now works for a "fierce" competitor of Quantum.  (Id. ¶¶ 7, 9.)  The remaining ten are either current employees residing in Washington, Colorado, or Australia, or are former employees residing in Irvine, California.  (Id. ¶ 7.)  The three Australian employees are senior employees and any disruption caused by their having to travel in connection with this action would be mitigated if the case were transferred to the Northern District of California, where they could also then have face-to-face meetings relating to their employment.  (Id. ¶ 8.)

Also in the Northern District of California are the two prosecuting attorneys listed for the '650 patent, Thomas A. Gallagher and David Lathrop.  (Quantum Mem. Rogers Decl. Exs. D, E, and F; ECF Nos. 89-2, 89-6, 89-7, 89-8.)

As noted above, CTS' organizer listed an address in Newport Beach.  This is the same address as the Orange County office of Acacia.  (Quantum Mem. Rogers Decl. Ex. B, ECF No. 89-4.)  Newport Beach is in the Central District of California.  The only other address listed for Acacia is the Frisco, Texas, address.  (Id.)

EMC, NetApp, and Quantum have each moved to transfer the case to the Northern District of California.  In its supplemental memorandum, H-P requests that, if the Court should grant the respective motions to sever and find that transfer to the Northern District of California is warranted, that the case against it also be transferred to that District.

## Discussion

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The statutory language [of § 1404(a)] reveals three general categories of factors that courts *must* consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." **Terra Int'l, Inc. v. Mississippi Chem. Corp.**, 119 F.3d 688, 691 (8th Cir. 1997)[4] (emphasis added). The "interests of justice" considerations may include "(1) judicial economy, (2) the plaintiff's choice of forum, and (3) the comparative cost to the parties of litigating in each forum, . . ."[5] **Id.** at 696. A district court's evaluation of a motion to transfer is not limited, however, to these three factors. **Id.** at 691. A district court has the discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" **Stewart Org., Inc. v. Ricoh Corp.** 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).

The first question to address when ruling on the pending § 1404(a) requests is whether this case "might have been brought" in the Northern District of California. Venue in a patent case is proper under 28 U.S.C. § 1400(b) where the defendant "resides" or "has committed

---

[4]Because a motion to transfer a patent case under § 1404(a) does not involve substantive issues of patent law, the law of the Eighth Circuit applies. See **In re TS Tech USA Corp.**, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

[5]Other considerations, e.g., "conflict of law issues" and the advantages of having a local court determine questions of local law," **Terra Int'l, Inc.**, 119 F.3d at 696, are irrelevant in a patent case because the claims arise under federal patent laws, "for which there is uniformity nationwide . . . ," **In re Link A Media Devices Corp.**, 662 F.3d 1221, 1224 (Fed. Cir. 2011) (per curiam). Considerations of "each party's ability to enforce a judgment" and "obstacles to a fair trial," **Terra Int'l, Inc.**, 119 F.3d at 696, have not been cited by any party as a favorable or unfavorable consideration in support of their respective arguments.

acts of infringement and has a regular and established place of business." The parties do not dispute that this action could have been filed in the Northern District of California.

Convenience of the Parties. The first factor to be considered then is the convenience of the parties. "'The "logical starting point" for analyzing the convenience of the parties is a consideration of their residences in relation to the district court and the proposed transferred district.'" **Fluid Control Prods., Inc. v. Aeromotive, Inc.**, 2011 WL 620115, * 2 (E.D. Mo. Feb. 11, 2011) (quoting 17 James Wm. Moore, et al., *Moore's Federal Practice*, § 111.12[1][e][i] (3rd ed. 2010)). This factor weighs in favor of EMC, H-P, NetApp, and Quantum (hereinafter collectively referred to as "Defendants"). It is unrefuted that each conducts business in the Northern District of California and that relevant information about at least three of the five remaining accused products,[6] i.e., Data Domain deduplication software; VTL Deduplication Software system; and DXi Series Deduplication software, is concentrated in that District. See **Biometics, LLC v. New Womyn, Inc.**, 112 F. Supp.2d 869, 875-76 (E.D. Mo. 2000) (finding that consideration of convenience of parties weighed in favor of defendants seeking transfer to district where "the documents, financial records, and employees likely to have knowledge of the facts concerning defendants' allegedly infringing products are located"). Information on one of the two remaining accused products, Avamar, is concentrated in an adjacent district, the Central District of California. See **In re Zimmer Holdings, Inc.**, 609 F.3d 1378, 1382 (Fed. Cir. 2010) (finding that transfer of patent case to one district was more convenient to parties when, among other things, much

---

[6]See note 3, supra.

of plaintiff's relevant information was in adjacent district).  Although no information is before the Court about H-P's StoreOnce software, it is undisputed that H-P's headquarters and research laboratory are in the Northern District of California.

 In comparison, the only connection CTS has to the Eastern District of Missouri is its filing of Articles of Organization in the state shortly before being assigned the '650 patent and less than a month before filing this action.  CTS does not allege that it has any offices or employees in Missouri; indeed, the only person listed on the Articles of Organization is in a district adjacent to the Northern District of California.  See **Id.** at 1381 (no weight was to be given to plaintiff's convenience when plaintiff had no employees in chosen district); **Shared Memory Graphics LLC v. Apple, Inc.**, 2010 WL 5151612, *2, 3 (W.D. Ark. May 27, 2010) (finding that convenience of parties favored transfer to the Northern District of California when majority of research, design, and technical activities took place there and noting that the Newport Beach location of plaintiff's parent corporation was closer to that district than to Arkansas and that plaintiff, although incorporated in Arkansas, had no relevant employees or documents in the district).  The Court notes that this District is adjacent to the offices of CTS' attorneys; however, "[t]he convenience of the plaintiff's counsel is not entitled to any weight in the analysis."  **Biometics**, 112 F. Supp.2d at 876.

Consideration of the convenience of the parties favors transfer to the Northern District of California.

Convenience of Witnesses.  "The convenience of witnesses has been called 'the most powerful factor governing the decision to transfer a case.'" **Fluid Control Prods.**, 2011 WL 620115 at *2 (quoting 17 *Moore's*, § 111.13[1][f][i]).  See also **In re Acer Am. Corp.**, 626

F.3d 1252, 1255 (Fed. Cir. 2010) (describing the convenience of witnesses as an important factor in the § 1404(a) analysis); **Anheuser-Busch, Inc. v. City Merchandise**, 176 F. Supp.2d 951, 959 (E.D. Mo. 2001) (describing the convenience of witnesses as the "primary, if not most important" factor in the § 1404(a) analysis) (internal quotations omitted).

EMC has named ten witnesses within the Northern District of California or an adjacent district and has indicated why their testimony is relevant.  NetApp has named three witnesses within the Northern District of California and has similarly described their importance.  Quantum has identified sixteen individuals, including ten current and six former employees, within the Northern District of California who "might" be witnesses in the case. H-P's director of engineering resides in California.  The two prosecuting attorneys for the '650 patent are in the Northern District of California.  See **In re Acer Am.**, 626 F.3d at 1255 (including location of prosecuting patent attorneys in "convenience of witnesses" analysis); **Shared Memory Graphics**, 2010 WL 5151612 at *4 (same); **Broadcast Data Retrieval Corp. v. Sirius Satellite Radio, Inc.**, 79 U.S.P.Q.2d 1603, 1605 (C.D. Ca. 2006) (same).

CTS has not identified any witnesses.  Although the sheer number of witnesses is not determinative of the convenience factor, see **Terra Int'l, Inc.**, 119 F.3d at 696, the failure of CTS to name one witness within the Eastern District of Missouri combined with the four remaining Defendants naming at least twenty-seven within the Northern District of California and several in an adjacent district strongly favors transfer.  In **In re Acer Am.**, 626 F.3d at 1255, the Federal Circuit held that a district court in Texas had abused its discretion when not transferring a patent dispute to the Northern District of California.  In considering the convenience of the witnesses, the court noted that "[a] substantial number

of party witnesses, in addition to the inventor and prosecuting attorneys, reside in or close to the Northern District of California." **Id.**  And,

> [if] all of these witnesses were required to travel to the Eastern District of Texas, the parties would likely incur significant expenses for airfare, meals, and lodging, as well as losses in productivity from time spent away from work. In addition, these witnesses will suffer the personal costs associated with being away from work, family, and community.  These costs would be significantly minimized or avoided by transferring the case to the Northern District of California.

**Id.**  Accord **In re Apple, Inc.**, 602 F.3d 909, 913-14 (8th Cir. 2010) (per curiam) (similar considerations favored transfer of suit from Western District of Arkansas to Northern District of California); **In re Microsoft Corp.**, 630 F.3d 1361, 1363-64 (Fed. Cir. 2011) (per curiam) (finding district court had abused discretion by not transferring case when "maintaining trial [in the plaintiff's chosen forum] would . . . require witnesses to undergo the cost, time, and expense of travel to attend trial, which would be significantly minimized if this case was transferred to [defendant's requested district]").  See also **Broadcast Data Retrieval**, 79 U.S.P.Q.2d at 1605 (finding that plaintiff's failure to name one witness combined with the parties' identifying as relevant only witnesses in the district to which transfer was sought strongly favored transfer).

CTS argues that "[t]he Eastern District of Missouri is as convenient as you can get for all parties" and that no one forum is convenient for all parties.[7]  (CTS Mem. at 2, ECF No.

---

[7]To the extent that CTS's argument relies on the presence of CA, Quest, and IBM as defendants, it is moot.  For instance, in opposing NetApp's motion to transfer, CTS argued that transfer would increase the inconvenience to CA.  (See CTS Mem. at 2, ECF No. 126.)  CTS also argued that by not filing a motion to transfer, H-P "apparently believes an action proceeding in the Eastern District of Missouri is acceptable."  (Id.)  H-P's request in it supplemental memorandum negates this assumption.  (H-P Supp. Mem. at 2, ECF No. 156.)

156; CTS Mem. at 2, ECF No. 127.)  As to the remaining Defendants, CTS cites in support of this argument NetApp's customer service operations in North Carolina; the development of NetApp's accused product in India; and Quantum's witnesses in Colorado, Washington, and Australia.

In **In re Genentech, Inc.**, 566 F.3d 1338, 1341 (Fed. Cir. 2009), the court rejected the plaintiff's argument that its case should remain in Texas because it was "centrally located between the parties [which this case no longer is, see note 3, supra] and would be more convenient for the six inventors who reside in Europe."  The court held that the European witnesses would be required to travel a significant distance no matter where they were to testify and that the district court had erred in giving significant weight to their inconvenience and not to that of the substantial number of domestic witnesses who would have to be *unnecessarily* inconvenienced if the case were not transferred.  **Id.** at 1344.  The court also cited cases with similar holdings with respect to witnesses from the United Kingdom, Finland, and Japan.  **Id.**  Similarly, the location of witnesses in India and Australia is, at best,[8] a neutral factor.  The convenience of the Washington witnesses favors transfer to the Northern District of California.  See **Shared Memory Graphics**, 2010 WL 5151612 at *5. The convenience of the Colorado witnesses is a neutral factor.  And, the location of NetApp's customer service operations in North Carolina is irrelevant in this patent dispute.  See **Biometics**, 112 F. Supp.2d at 876 (considering convenience of witnesses in plaintiff's chosen

---

[8]Quantum's argument that its Australian witnesses would be less inconvenienced by a trial in the Northern District of California because they could then use their presence there to accomplish other employment-related tasks tilts this consideration in favor of transfer.

forum as irrelevant in patent suit when witnesses would only testify about using accused product).

For the foregoing reasons, CTS' citation to locations of witnesses outside of the Northern District of California does not weaken the strong weight to be given the convenience factor in favor of transfer.  See e.g. **In re Microsoft.**, 630 F.3d at 1199 (district court abused its discretion in denying motion to transfer case from Eastern District of Texas to Western District of Washington; although only four of identified witnesses lived in Washington – others lived in Ohio, New York, and Japan – none lived in Texas).

Also relevant to this convenience factor is "[t]he amenability of significant nonparty witnesses to subpoena at the respective forums . . . .'" **Fluid Control Prods.**, 2011 WL 620115 at 3 (quoting 17 *Moore's*, § 111.12[1][g]); accord **In re Acer Am.**, 626 F.3d at 1255; **In re Genentech**, 566 F.3d at 1345.  Quantum has identified a key witness, i.e., Jeffrey Tofano, a man responsible for the development of the accused product, for whom it expects to use the subpoena powers of the Northern District of California to compel his testimony. NetApp has also identified a co-founder of Alacritus, Roger Stager, that is a key witness and is not a NetApp employee.  He resides within the subpoena reach of the Northern District of California.  In contrast, CTS has identified no witness, key or otherwise, for whom it will require this District's subpoena power.

Defendants argue that the "location of likely sources of evidence," see **In re Acer Am.**, 626 F.3d at 1256, favors transfer to the Northern District of California.  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor

of transfer to that location." **In re Genentech**, 566 F.3d at 1345 (internal quotations omitted); <u>accord</u> **In re Nintendo Co.**, 589 F.3d 1194, 1199 (Fed. Cir. 2009).  The only evidence before the Court of the location of sources of proof in the instant case places those sources in the Northern District of California.

CTS contends, however, that an argument that the location of documents weighs in favor of transfer "ignores how modern litigation proceeds."  (CTS Mem. at 11; ECF No. 106.)  "[D]ocuments will be disclosed either by mail or electronically." (<u>Id.</u>)  In **Tomita Techs. USA, LLC v. Nintendo Co.**, — F. Supp.2d —, 2011 WL 4851142, *1 (S.D. N.Y. 2011), cited by CTS, the court found that technological advances rendered the location of documents to be less relevant.  It specifically noted that the accused infringer, Nintendo, was "almost certainly" not going to ship documents relating to the designed process of its accused product from Japan to the trial court, whether it be in the Southern District of New York or, as requested by Nintendo, in the Western District of Washington.  "Instead, it will scan those documents onto a computer, producing them with the click of a mouse in either New York or Washington." **Id.**  <u>See</u> <u>also</u> **Ford v. Hubbell Inc.**, 2011 WL 1259707, *4 (S.D. Ill. Mar. 31, 2011) (finding that "documents will be disclosed either by mail or electronically or, most likely, both") (cited by CTS).

In **In re Apple**, 602 F.3d at 914, the district court had "found that the location of documents did not favor transfer in 'this age of electronic document transmissions.'"  The Eighth Circuit rejected this reasoning, holding that "[w]hile electronic filing may lessen the inconvenience of document handling, if the need arises to refer to original documents or evidence in the litigation, Northern California would be more convenient."  Northern

California was the principal place of business of the defendant. **Id.**  Also, when reviewing a district court's denial of a motion to transfer a patent case, the Federal Circuit held in **In re Link A Media Devices**, 662 F.3d at 1224, that it was error to ignore the location of books and records although technological advances might "alter the weight given to these factors."  That court had held the year before in **In re Acer Am.**, 626 F.3d at 1256, that the district court had erred by not granting defendant's motion to transfer a patent dispute to the Northern District of California when a significant portion of the evidence was located within that district and, as in the instant case, no party had identified any likely source of proof in the plaintiff's chosen forum.  And, in **In re Genentech**, 566 F.3d at 1345-46, the Federal Circuit reversed the denial of a motion to transfer a patent case when the district court had "minimized the inconvenience of requiring the petitioners to transport their documents" on the grounds that the physical location of relevant documents was irrelevant in a venue analysis "in the era of electronic storage and transmission."  (Internal quotations omitted.) The court held that keeping the case in the plaintiff's chosen forum, the Eastern District of Texas, would "impose a significant and unnecessary burden on the petitioners to transport documents that would not be incurred if the case were to proceed to the Northern District of California."  **Id.** at 1346.  Similarly, in the instant case the only sources of proof to be identified are located in the Northern District of California.

For the foregoing reasons, consideration of this convenience factor strongly favors transfer to the Northern District of California.

Interests of Justice.  As noted above, included in this factor are such considerations as "judicial economy," "the plaintiff's choice of forum," and "the comparative costs to the parties in litigating in each forum."  **Terra Int'l, Inc.**, 119 F.3d at 696.

"In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted."  **Id.** at 695.  If, however, the plaintiff's presence in the chosen forum "appears to be recent, ephemeral, and an artifact of litigation," no such deference is due.  **In re Zimmer Holdings**, 609 F.3d at 1381 (citing Hertz Corp. v. Friend, 130 S.Ct. 1181, 1195 (2010)).  See also **Shared Memory Graphics**, 2010 WL 5151612 at *5 ("Although plaintiff's choice of forum should receive deference, it is assigned less weight when the operative events giving rise to the lawsuit took place in a forum other than that chosen by plaintiff.").  Thus, the plaintiff's chosen forum was not given deference in a patent dispute in which the only connection of the case to the forum was the defendants' sale of the accused products in the district and the plaintiff's incorporation in the state three weeks before filing suit.  **Id.** at *6.  The court held that the timing of the incorporation "ha[d] the appearance of forum shopping."  **Id.**  See also **In re Link_A_Media Devices**, 662 F.3d at 1224 (discounting plaintiff's state of incorporation in chosen forum as relevant consideration when there was no other ties of the forum to the dispute or to either party); **In re Microsoft**, 630 F.3d at 1364, 1365 (describing as fallacious an assumption that the court had "to honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient" and finding that plaintiff's incorporation in state sixteen days before filing suit was "no more meaningful, and no less in anticipation of

litigation" than other considerations); **Broadcast Data Retrieval**, 79 U.S.P.Q.2d at 1605-06 (finding in patent case that formation of plaintiff in chosen forum three weeks prior to filing suit and lack of any activity during those three weeks that would give the district "a significant connection to th[e] action" negated any deference generally given plaintiff's choice).

CTS' argument that its choice of forum should be given deference because that is where the wrongful activity occurred is similarly unavailing.  "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any venue . . . ." **In re Acer Am.**, 626 F.3d at 1256.  See also **In re TS Tech USA**, 551 F.3d at 1321 (sale of accused products throughout the United States meant that citizens of chosen forum had "no more or less a meaningful connection to th[e] case than any other venue").

CTS further argues that "the comparative costs to the parties of litigating in each forum," another consideration in the "interests of justice" factor, see **Terra Int'l**, 119 F.3d at 696, weighs against transfer because "EMC can easily bear the costs of litigating in this forum" and "appears to have sales close to $19 billion for 2011."  (CTS Mem. at 10, ECF No. 106; CTS Burns Decl. Ex. 13, EMC 106-14.)  EMC counters that CTS appears to be a subsidiary of Acacia,[9] which had a third quarter revenue in 2011of over $50 million.  (EMC Mem. at 11, ECF No. 134; Mathews Decl. Ex. D, ECF No. 134-5.)  As the costs of litigation appears to be able to be born by all parties, the Court will not weigh this consideration in favor of or against transfer.

---

[9]As noted by EMC, CTS does not refute this allegation, made in EMC's first memorandum.

When considering the question of "judicial economy," the Court notes the following. The Northern District of California is familiar with patent litigation.  Indeed, it was the first district to adopt local patent rules[10] and was selected in June 2011 to be in Patent Pilot Program.  This program "is intended to improve the adjudication of patent disputes."  H.R. Rep. 109-673, 2006 WL 2767032, *3 (2006).

**Conclusion**

Having carefully reviewed the considerations relevant to a motion to transfer under 28 U.S.C. § 1404(a) and the parties opposing and supporting arguments, the Court finds that this case should be transferred to the Northern District of California.  The Court leaves to that District the questions of dismissal for improper joinder and of severance raised by the four remaining Defendants.

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the motion of EMC Corporation to dismiss or, alternatively, to sever and transfer to the Northern District of California is **GRANTED** insofar as a transfer is sought and is **DENIED** without prejudice insofar as dismissal or severance is sought.  [Doc. 65]

**IT IS FURTHER ORDERED** that the motion of Hewlett-Packard Company to dismiss or sever is **DENIED** without prejudice.  [Doc. 67]

**IT IS FURTHER ORDERED** that the motion of Quantum Corporation to dismiss or sever is **DENIED** without prejudice. [Doc. 87]

---

[10] See Travis M. Jensen, *Patent Local Rules – A Summary and Comparison*, 2010 WL 709700 at *961 (2010).

**IT IS FURTHER ORDERED** that the motion of Quantum Corporation to transfer to the Northern District of California and the motion of NetApp, Inc., to transfer to the Northern District of California are each **GRANTED**.  [Docs. 88, 92]

**IT IS FURTHER ORDERED** that motion of NetApp, Inc., to dismiss for improper joinder or, alternatively, to sever is **DENIED** without prejudice.  [Doc. 91]

**IT IS FINALLY ORDERED** that the motions of CA, Inc., are **DENIED** as moot. [Docs. 69, 71]

An appropriate Order of Transfer shall accompany this Memorandum and Order.


/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  6th  day of April, 2012.