UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COMPRESSION TECHNOLOGY SOLUTIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>EMC CORPORATION, NETAPP, INC., AND QUANTUM CORP.,<br><br>Defendants. | Case No. C-12-01746 RMW<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND DENYING STAY**<br><br>[Re Docket No. 211, 218] |

The defendants bring this motion for summary judgment arguing that plaintiff Compression Technology Solutions LLC's ("Compression Technology") method and apparatus claims directed to parsing information into packets based upon "context-insensitive" parsing set forth in Patent No. 5,414,650 ("'650 patent") are invalid. Defendants contend that asserted method claims 9 through 12 and apparatus claims 2 and 3 do not embody patentable inventions under 35 U.S.C. § 101 and that claims 2 and 3 have no corresponding structure for the means limitations claimed. *See* 35 U.S.C. § 112(f). The court agrees and, therefore, grants summary judgment in favor of defendants.

# I. BACKGROUND

## A. Procedural History

Compression Technology, a wholly owned subsidiary of Acacia Research Group, LLC, claims that defendants' products infringe claims 2, 3, and 9 through 12 of the '650 patent.

In September 2011, Compression Technology filed its patent infringement complaint in the Eastern District of Missouri. The Missouri court ordered the case transferred to the Northern District of California. *See* Order, Dkt. No. 171. Now, as a threshold matter prior to claim construction and discovery, the defendants bring their motion for summary judgment of invalidity on the grounds that: (1) the asserted claims do not involve patentable subject matter under 35 U.S.C. § 101, and (2) claims 2 and 3, which contain means-plus-function limitations, fail to provide the required corresponding structure under 35 U.S.C. § 112(6).

## B. The Patent

The '650 patent, titled "Parsing Information Onto Packets Using Context-Insensitive Parsing Rules Based On Packet Characteristics," relates in general to information storage and communication and "more particularly to the parsing of information streams into groups or packets of information so as to improve the performance of various information processing applications such as data compression and file-contents verification." '650 patent col.1 ll.1-4, col.1 ll.8-12.

Context insensitive parsing "will parse similar information streams into identical packets except for the packets parsed from portions of the streams near the dissimilarities." '650 patent col.2 ll.43-46. It tries to "minimize the number of differences in packet boundaries between similar streams or between similar portions of streams." *Id.* at col.8 ll.37-39. Context insensitive parsing is different from standard context sensitive parsing where a minor change early in one of two otherwise similar data streams would result in different output packets. For example, given an input stream of packets of single letters, outputting every ten letters as a single output packet would be an example of context sensitive parsing. Adding a single letter to one of two identical streams would change all the downstream packets of the edited stream such that they would no longer match the output packets of the unedited stream.

At issue in this case are independent claims 2, 9, and 11 and dependent claims 3, 10, and 12. Claim 9, which is the only claim specifically identified in the complaint, reads:

> An information processing method for processing an information stream comprising input packets said method comprising
>
> receiving said information stream and receiving an indication of the boundaries in said information strum [sic] for each of said input packets
>
> classifying said input packets according to intrinsic characteristics of said input packets or transitions in quantitative characteristics of two or more of said input packets and
>
> parsing said input packets into output packets in response to said classifying and
>
> generating an indication of the boundaries of said output packets wherein each of said output packets comprises or represents one or more of said input packets.

*Id.* at col.15 ll.46-59. Claim 11 adds the limitation that the input packets are one or more previously parsed packets. *Id.* Claim 2 is an apparatus claim with means-plus-function limitations with the same functional steps as method claim 9, although it omits parsing according to "intrinsic characteristics" and instead requires an "information processor." *Id.* at col.15 ll.1-15. Claim 2, which is representative of the means-plus-function claims, reads:

> An information processor for processing an information stream comprising input packets, said information processor comprising
>
> input means for receiving said information stream and for receiving an indication of the boundaries in said information stream for each of said input packets,
>
> classification means for classifying said input packets according to transitions in quantitative characteristics of two or more of said input packets, and
>
> parsing means responsive to said classification means for parsing said input packets into output packets and for generating an indication of the boundaries of said output packets, wherein each of said output packets comprises or represents one or more of said input packets.

*Id.* col.15 ll.1-15. Dependent claims 3 and 10 add the additional step of "generating an output stream," *id.* col.15 ll.16-19, and dependent claim 12 reiterates the process in claims 9 and 11 using the output of the first process as an input. *Id.* col.16 ll.13-18.

## II. ANALYSIS

Section 101 of the Patent Act defines patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Supreme Court precedent provides three general exceptions to section 101's broad eligibility: laws of nature, physical phenomena, and abstract ideas. *See Bilski v. Kappos,* 130 S. Ct. 3218, 3225 (2010). These exceptions are not patent-eligible because "they are the basic tools of scientific and technological work," which are "free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) and *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980)). Defendants bring this motion for summary judgment of invalidity arguing that the asserted claims of the '650 patent are unpatentable abstract ideas. They also claim that the apparatus claims do not have the required corresponding structure for their means limitations.

The court first concludes that the validity issues can be considered as a threshold issue. It then analyzes whether the subject matter of the claims at issue are patent eligible and concludes that they are not. Finally, the court considers whether the means-plus-function limitations in claims 2 and 3 have adequate corresponding structure in the specification and concludes that they do not.

### A. Patent Eligibility as a Threshold Matter

Compression Technology argues that the construction of certain terms in its favor would prove fatal to defendants' invalidity arguments. Opp'n 13, Dkt. No. 213. Patentability is a threshold test, which a court may consider prior to claim construction. *See Bancorp Servs. v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) (finding "no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101," although the court went on to construe some of the terms); *OIP Techs., Inc. v. Amazon.com, Inc.*, No. C-12-1233 EMC, 2012 WL 3985118 (N.D. Cal. Sept. 11, 2012) (finding section 101 patent ineligibility prior to claim construction although noting that plaintiffs had failed to explain how claim construction would materially impact the analysis); *CyberFone Sys., LLC v. Cellco*

*P'ship*, 885 F. Supp. 2d 710, 715 (D. Del. 2012) (granting summary judgment on section 101 invalidity prior to claim construction after finding that plaintiff "failed to articulate a compelling reason why the court would lack a full understanding of the claimed subject matter" without construing the claim).

Here, Compression Technology insists that its claims are limited to manipulating digital data because it claims "information streams," and "packets," which it argues must be construed to refer to digital data. Opp'n 13-14. Compression Technology also argues that the court should construe the term "parsing" as used in the claims as "context insensitive" parsing because that is the name of the patent and "context insensitive" is repeated frequently in the specification. Opp'n 14-17.

Although Compression Technology's assertion that proper claim construction would limit the claimed inventions to processing digital data seems questionable, the court will accept Compression Technology's proposed construction for purposes of defendants' motion.

### B.     Section 101 Analysis

Patents are presumed to be valid and the party asserting invalidity has the burden of establishing invalidity by clear and convincing evidence. 35 U.S.C. § 282; *Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1355 (Fed. Cir. 2007). Furthermore, the Federal Circuit has warned courts not to "presume to define 'abstract' beyond the recognition that this disqualifying characteristic should exhibit itself so manifestly as to override the broad statutory categories of eligible subject matter and the statutory context that directs primary attention on the patentability criteria of the rest of the Patent Act." *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 868 (Fed. Cir. 2010).

Although not dispositive, the Supreme Court has held that the machine-or-transformation test is an important investigative tool in determining section 101 eligibility. *Bilski*, 130 S. Ct. at 3227. In addition to considering the machine-or-transformation test, a court must consider established precedent to determine if an invention falls within one of the general exceptions to section 101 eligibility, although it is only a "coarse eligibility filter" and not the final arbiter of patentability. *See Bilski*, 130 S. Ct. at 3231; *Research Corp.*, 627 F.3d at 869.

The court in *OIP Technologies, Inc. v. Amazon.com*, *Inc.*, performed a thorough analysis of section 101 jurisprudence distilling general principles of section 101 eligibility, which the court finds helpful:

1. A patent may not simply restate laws of nature or abstract ideas (*e.g.,* mathematical formulas, basic principles of risk management, etc.), or apply them in some rudimentary fashion; instead, the invention must add some innovative concept to transform the process into an inventive application of the formula, idea, or law of nature.

2. While the [machine-or-transformation test] is an important clue for determining patent eligibility, the test does not "trump" the law of nature or abstract idea exclusion.

3. When analyzing a patent's claimed elements, the use of a computer is not itself sufficient to satisfy either the [machine-or-transformation test] or the eligibility analysis more generally.

4. An abstract idea or law of nature even if limited to one field of application (*e.g.,* hedging in energy markets) is still patent ineligible.

5. A patent need not preempt an entire field in order to be ineligible; rather, the question is whether "upholding the patents would risk *disproportionately* tying up the use of the underlying abstract ideas or natural laws, inhibiting their use in the making of further discoveries."

2012 WL 3985118 at *12 (N.D. Cal 2012) (citations omitted; as altered).

To determine patent eligibility under section 101, the court will follow the suggestion in *Bilski* to look to the guideposts of Supreme Court precedent and post-*Bilski* Federal Circuit opinions to determine whether the claims in the '650 patent set forth patentable processes. *Bilski*, 130 S. Ct. at 3231. This was also the approach adopted by the majority of judges in the recent *CLS Bank International v. Alice Corp.* en banc decision. No. 2011–1301, 2013 WL 1920941, *5, *28 (Fed. Cir. May 10, 2013) (both the per curiam opinion by Judges Lourie, Dyk, Prost, Reyna, and Wallach as well as the partial concurrence filed by Chief Judge Rader and Judges Linn, Moore, and O'Malley specifically endorse this approach).[1] The court will then consider the machine-or-transformation test and whether the claimed "information processor" can save the

---

[1] The opinion does not otherwise modify the holdings of the prior Federal Circuit cases that came before or provide a clear test for eligibility under section 101 because a majority of judges could only agree on the holding of the case and not on a legal rationale for their conclusion.

claims from patent ineligibility. *See Bilski*, 130 S. Ct. at 3226 (the machine-or-transformation test is "an important and useful clue").

### 1. Abstract ideas

The Supreme Court instructs that "mental processes, and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Gottschalk*, 409 U.S. at 67. In *Mayo,* the Court observed that its own precedent insists that a valid patent on an abstract idea must "contain other elements or a combination of elements, sometimes referred to as an 'inventive concept,' sufficient to ensure that the patent in practice amounts to significantly more than a patent upon" an abstract idea. *Mayo*, 132 S. Ct. at 1294.

The '650 patent is no more than an abstract idea: all of the claimed limitations can be performed as mental processes; it is more abstract than other patents the Federal Circuit has found impermissibly abstract; and it is so broad that it would inappropriately limit future innovation.

#### (a) Mental Processes

The Federal Circuit has held that "methods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011). A claim that merely requires using a "computer to execute an algorithm that can be performed entirely in the human mind" or using pencil and paper is impermissibly abstract. *Id.* at 1372, 75. Here, all of the steps of Compression Technology's broad patent claims can be completed entirely in the human mind or with a little help from pencil and paper.

Compression Technology argues that a finding that the patent is limited to digital data decides the issue because "if digital data is required, the human mind cannot utilize or comprehend it." Opp'n 14. This is simply not true. The Federal Circuit has found a "computer readable medium" limitation—effectively the same as a digital data limitation—does not make an "otherwise unpatentable method patent-eligible under § 101." *CyberSource*, 654 F.3d at 1375. Performing digital calculations may be more difficult, but *Gottschalk*, *Bilski, CyberSource, Dealertrack v. Huber*, and *Bancorp* demonstrate manipulations of digital data alone are not

1  sufficient for a finding of patentability. 409 U.S. 63; 130 S. Ct. 3218; 654 F.3d 1366; 674 F.3d
2  1315 (Fed. Cir. 2012); 687 F.3d 1266. For example, the Supreme Court in *Gottschalk* held that
3  the conversion of digital numbers from one format to another "can be done mentally." 409 U.S.
4  at 65-67. It demonstrated the manipulation by describing it in the opinion itself. *Id*. Similarly,
5  the court in *Bancorp* noted the "interchangeability of certain mental processes and basic digital
6  computation." 687 F.3d 1277-78.

7      The defendants' papers provide many examples of how the claims could be completed
8  entirely in the human mind. *See* Defs.' Br. 5-8, Dkt. No. 211; Reply 4, Dkt. No. 215. In
9  particular, defendants give the example of someone interpreting Morse code as practicing the
10  invention. *See* Reply at 4. A Morse code operator receives an "information stream" comprised of
11  packets of dashes or dots (effectively 1s or 0s) whose boundaries are indicated by silence. The
12  operator classifies the input packets into words and sentences based upon the characteristics of
13  the input packets: essentially the operator looks at the stream of letters and recognizes the words
14  in the stream based upon his knowledge of the language. Finally, based upon that classification,
15  the operator writes an output of words and sentences using pencil and paper indicating the
16  boundaries of the output packets with spaces and punctuation. In doing so, the operator is in fact
17  performing context insensitive parsing as explained by the Compression Technology and the '650
18  patent. *See* Opp'n 14-17; '650 Patent 2:43-46. Context insensitive parsing would parse similar
19  sections into similar output packets minimizing the differences between the output packets of the
20  two streams. *Id.* Consider the following example of a data stream containing a message as it
21  would be received by a Morse code operator (the dots and dashes have been converted to letters
22  for convenience and spaces represent the boundaries of packets):
23        1.    t h e q u i c k b r o w n f o x j u m p s o v e r t h e l a z y d o g
24        2.    t h e q u i c k b r o w n h e d g e h o g j u m p s o v e r t h e l a z y d o g
25  A Morse code operator would parse the two streams as follows with spaces now representing the
26  boundaries of the output packets:
27        1.    the quick brown fox jumps over the lazy dog
28        2.    the quick brown hedgehog jumps over the lazy dog

ORDER GRANTING SUMMARY JUDGEMENT
CASE NO. C-12-01746-RMW
SW
- 8 -

1  The output packets for both streams are identical for the same segments of the input stream that
2  were identical.

3  Compression Technology suggests in its opposition that a similar example is too
4  simplistic and a person could not easily describe a true rule set in English, Opp'n 16 n.6., but the
5  court does not find any such limitation in the claims. And, even if the Morse code operator in the
6  example above would have trouble describing the exact parsing rules he applied, he is still
7  perfectly capable applying them in his head. Thus, as demonstrated by the example, a person can
8  complete the claims as pure mental processes.

9  (b)  Prior Cases

10  In *Bilski, CyberSource*, *Dealertrack*, *Fort Properties, Inc. v. American Master Lease LLC*,
11  and *Bancorp*, the Federal Circuit and Supreme Court found patent claims ineligible under section
12  101 because they were not particular and could be performed in the human mind. In *Bilski*, the
13  patentee tried to claim the concept of hedging, as a general concept and as a mathematical
14  formula; the court found that both were unpatentable abstract ideas. *Bilski*, 130 S.Ct. at 3231.
15  Similarly, in *CyberSource*, the Federal Circuit found that a method for verifying credit card
16  transactions over the internet was invalid because it involved a purely mental process of obtaining
17  information and using it "in some undefined manner." *CyberSource*, 654 F.3d at 1376. In
18  *Dealertrack*, the patentee claimed the basic concept of hedging but the court found that the steps
19  in the claim did not "impose meaningful limits on the claim's scope." 674 F.3d at 1333. The
20  patent was even limited to the car-loan application process, but the court found that this was not a
21  meaningful limit as it still covered a "broad idea." *Id.* at 1334. In *Fort Properties*, the Federal
22  Circuit held that claims disclosing "a real estate investment tool designed to enable tax-free
23  exchanges of property" were directed to a patent ineligible abstract concept even though they
24  were tied to "the physical world through deeds, contracts, and real property," and that the
25  presence of a "computer" limitation in certain claims placed no meaningful limitation on the
26  claims' scope. 671 F.3d 1317, 1322-24 (Fed. Cir. 2012). Finally in *Bancorp*, the court rejected a
27  patent on managing a stable value life insurance policy based on the use of well-known
28  calculations to establish some of the inputs into the equation because it "did not effect a

1  transformation" and the use of a "computer to accelerate an ineligible mental process does not
2  make that process patent-eligible." 687 F.3d at 1278, 79.

3  In *Gottschalk*, the patentee claimed a process for converting the format of digital numbers.
4  409 U.S. 63. The claims at issue were for a "generalized formulation for programs to solve
5  mathematical problems of converting one form of numerical representation to another." *Id.* at 65.
6  The Court recognized that the claimed invention had no practical application except in connection
7  with a digital computer. Thus, a finding that a digital computer was a sufficient limitation would
8  "wholly pre-empt the mathematical formula and in practical effect would be a patent on the
9  algorithm itself." *Id.* at 72. Even though the claims specifically recited the use of specific
10 computer components (shift registers), the court found the patent impermissibly abstract. *Id.* at
11 73.

12 The Federal Circuit has found claims valid under section 101 post *Bilski*. In particular, in
13 *Research Corp.,* the court found that claims for rendering halftone images of a digital image that
14 involved manipulation of specific data structures were patent eligible. 627 F.3d at 868. The
15 invention had specific applications and some of the claims required specific components like
16 "high contrast film" and "printer and display devices." *Id.* at 869. Although the methods
17 incorporated algorithms and formulas, the claims were directed to specific applications of those
18 ideas and thus the claims were still patent eligible. *Id.*

19 The claims at issue here are even more abstract than those in *Bilski*, *CyberSource*,
20 *Dealertrack*, *Fort Properties*, and *Bancorp*, which were at least limited to specific markets.
21 Compression Technology's claims, on their face, cover taking an input broken into packets,
22 parsing the input by some unspecified criteria, and then outputting the input as packets of equal or
23 larger sizes. Compression Technology defines "packet" very broadly to include any type of
24 digital data. *See* Opp'n 14. These sweeping claims cover generalized formulations for parsing
25 data that do not impose meaningful limits. Even if Compression Technology's claims are limited
26 to storage media and digital data, these are still general structures of a computer and do not rise to
27 the level of specificity of the data structures in *Research Corp.* 627 F.3d at 868; *see also*
28

*Bancorp*, 687 F.3d at 1279 (distinguishing a patent that merely claimed a computer to do calculations versus *Research Corp.*, which claimed manipulation of specific data structures).

(c) Unknown Future Uses

Another test for whether claims are directed to patent ineligible subject matter is whether they are "so abstract and sweeping as to cover both known and unknown uses." *Benson*, 409 U.S. at 68. The Supreme Court found a method for converting binary numbers too abstract because its end use could "vary from the operation of a train to verification of drivers' licenses to researching the law books for precedents" and because it could "be performed through any existing machinery or future-devised machinery or without any apparatus." *Id.* The Supreme Court disapproves of upholding patents that "would risk disproportionately tying up the use of the underlying [abstract ideas], inhibiting their use in the making of further discoveries." *Mayo*, 132 S. Ct. 1289, 1294. Similarly, in *Dealertrack*, the Federal Circuit found a patent on a computer-aided method for processing credit applications over networks to be so abstract as to effectively claim the idea of a clearinghouse, thereby impermissibly foreclosing innovation in the area. 674. F.3d at 1333.

Compression Technology's claims are similarly abstract and sweeping. Even if the claims were limited to digital data and context insensitive parsing, the claims by Compression Technology's own words would still broadly cover almost all information processing associated with compression, storage, and transmission of digital information. Nothing in the claims provides specific applications or other limitations that would prevent the patent from including unknown future uses. *See* Opp'n 9.

**2. Machine-or-Transformation Test**

Based upon the above analysis the claims are impermissibly abstract. The only issue that remains is whether tying the claims to a machine—a computer—can save the claims at issue from ineligibility. Compression Technology argues that requiring an information processor for claims 2 and 3 saves them. Opp'n 17. Similarly, it argues that the process claims 9 through 12 are not abstract because they are carried out on a structure—a computer. *Id.* at 18.

1 The useful, but not dispositive, machine-or-transformation test establishes that a claimed
2 process is patent eligible if "(1) it is tied to a particular machine or apparatus, or (2) it transforms
3 a particular article into a different state or thing." *Bilski* at 3221. Compression Technology
4 argues that: (1) claims 2 and 3 claim a machine; (2) claims 9 through 12 are carried out on a
5 structure; and (3) all of the claims therefore satisfy the first prong of the machine-or-
6 transformation test. Opp'n 17-18. The court disagrees.

7 General purpose computers programmed in an unspecified manner cannot satisfy the
8 machine-or-transformation test. *Dealertrack*, 674 F.3d at 1333. To be patent-eligible the claims
9 must require "a specific application," be "tied to a particular machine," or specify how the
10 computer aids the process. *Id.* Using a computer for its basic function of making calculations or
11 computations "fails to circumvent the prohibition against patenting abstract ideas and mental
12 processes." *Bancorp*, 687 F.3d at 1278. Simply adding a label like "computer aided" or vague
13 references to calculations or "digital storage" will not render an otherwise abstract idea patent
14 eligible. *Id.* at 1277-78; *Dealertrack*, 674 F.3d at 1333.

15 In *Dealertrack*, the patent claimed a process involving receiving data from one source,
16 selectively forwarding the data, and forwarding reply data to the first source. *Dealertrack*, 674
17 F.3d at 1333. The Federal Circuit found that adding the limitation "computer-aided" to the
18 preamble of this claim failed to sufficiently limit the claim to make it patent eligible. *Id.* Because
19 the patent failed to "specify how the computer hardware and database are specially programmed
20 to perform the steps claimed in the patent," the court found that very term "computer aided" to be
21 meaninglessly abstract. *Id.*

22 Compression Technology's claims are much like those in *Dealertrack*. Claims 2 and 3
23 recite general claims that could otherwise be performed in the human mind as discussed above.
24 To these general claims, Compression Technology appended in the preamble a limitation that the
25 claims require an "information processor," which similar to "computer aided" in *Dealertrack*,
26 does nothing specific to limit the scope of the claims. *See Dealertrack*, 674 F.3d at 1333.
27 Compression Technology's claims require nothing more than a general-purpose computer that
28

ORDER GRANTING SUMMARY JUDGEMENT
CASE NO. C-12-01746-RMW - 12 -
SW

1    speeds the calculations, which as numerous courts have ruled does not meaningfully limit the
2    scope of its claims. *See CyberSource,* 654 F.3d 1376; *Bancorp*, 687 F.3d 1279-80.

3        Compression Technology submits that since the claims require a computer they are patent
4    eligible. This at most is true if the computer is "integral" to the claimed invention. *Bancorp*, 687
5    F.3d at 1277, 78. To be integral, the computer must facilitate the process in a way a person could
6    not. *Id.* In *SiRF Technology v. International Trade Commission*, the court found that for a
7    computer to place a meaningful limit on the scope of the claim, it must play a significant part in
8    permitting the claimed method to be performed rather than being a means to perform the claims
9    more quickly. 601 F.3d 1319, 1333 (Fed. Cir. 2010). The patent at issue in *SiRF* related to a
10   method for calculating GPS coordinates, and the court held that the GPS receiver meaningfully
11   limited the claims by requiring actually receiving the GPS signal—something that clearly could
12   not be accomplished in someone's head. Here, even if the '650 patent is directed to digital data
13   and its application is generally in the field of computers, requiring an "information processor"
14   does not meaningfully limit the invention. The court finds the claims to be fatally similar to the
15   claims in *Gottschalk*. The patent there claimed an algorithm that only applied to a computer, but
16   the algorithm could still be performed mentally and thus the limitation was not specific enough to
17   save the patent from being abstract. *See* 409 US 63.

18       **C.**     **Lack of Corresponding Structure**

19       Claims 2 and 3 have several means-plus-function limitations. For example, to be a valid
20   means-plus-function limitation, the written description must set forth the corresponding structure
21   that performs the function. 35 U.S.C. § 112(f). The identification of the structure disclosed in the
22   written description that corresponds to the 'means' for performing that function is a question of
23   law for the court. *See Kemco Sales, Inc.*, *v. Control Papers Co., Inc.*, 208 F.3d 1352, 1360 (Fed.
24   Cir. 2000). Compression Technology argues that the blocks labeled "classification means" and
25   "parsing means" in the drawings in the patent show the structure that could be a general purpose
26   computer programmed to use the rules set forth in the specification. However, the rules set forth
27   in the specification are not part of the corresponding structure to the "classification means" and
28   "parsing means" and to consider them as such would be contrary to Compression Technology's

infringement contentions, which suggest that a general purpose processor is the corresponding means. A general purpose computer must be programmed with a specific algorithm to satisfy the corresponding structure requirement. *See Net MoneyIN, Inc. v. VeriSign, Inc.*, 545F.3d 1359, 1367 (Fed. Cir. 2008) ("[A] means-plus-function claim element for which the only disclosed structure is a general purpose computer is invalid if the specification fails to disclose an algorithm for performing the claimed function."); *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008) ("[I]n a means-plus-function claim 'in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm.'") (citation omitted). Claims 2 and 3 are thus invalid under section 112(f) for failing to have the required corresponding structure for the means limitations.

### III. ORDER

Claims 2, 3, and 9 through 12 of the '650 patent are impermissibly abstract. Therefore, the court grants defendants' motion for summary judgment and dismisses Compression Technology's claims with prejudice. The written description fails to set forth the required corresponding structure for claims 2 and 3 and thus those claims are also invalid for that reason.

Compression Technology's motion to stay the case is denied as moot as the *CLS Bank* opinion has issued.

Dated: May 29, 2013

*Ronald M. Whyte*
Ronald M. Whyte
United States District Court Judge